1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

6
7
8

RYAN PAUL SHIPLEY,

No. C04-2560P

9

Plaintiff,

ORDER GRANTING
DEFENDANT'S MOTION FOR
ATTORNEYS' FEES

10

v.

11

TRANS UNION CORPORATION,

12

Defendant.

13
14

This matter comes before the Court on Defendant Trans Union Corporation's Motion for

15

Attorneys' Fees. (Dkt. No. 29). Having considered the papers and pleadings submitted by the parties

16

and the balance of the record in this case, the Court finds that Plaintiff filed this case and pursued this

17

action in bad faith and for purposes of harassment. The Court further finds that Defendant's request

18

for attorneys' fees and costs is reasonable. Therefore, the Court GRANTS the Defendant's motion

19

and awards $17,975.14 in attorneys' fees to Defendant Trans Union Corporation.

20

**Background**

21

Based on discovery responses that Plaintiff Ryan Paul Shipley filed with the Court (Dkt. No.

22

19), it appears that Plaintiff filed a complaint with the Everett, Washington Police Department in

23

2002 regarding an identity theft incident. According to police records, Mr. Shipley apparently

24

learned of the identity theft when he received a letter from the Washington Department of Licensing

25

stating that his driver's license was going to be suspended for his failure to respond to a citation.

26

Plaintiff reported that someone unknown to him had falsely used his name at the scene of an

ORDER - 1

1 | automobile accident.  Police investigators found the individual who had done so.  Plaintiff provided

2 | the police with witness statements in connection with this matter.

3 |       Plaintiff apparently contacted various retailers and collection agencies, claiming that a number

4 | of accounts under his name had not been initiated by him and were the result of fraud.  Plaintiff has

5 | submitted documents indicating that he was relieved of responsibility for accounts originating with

6 | (among other companies) Verizon Wireless, Park Dansan, Discover, and West Coast Adjusters.

7 | (Dkt. No. 37, Exs. N - Q).

8 |       In March 2004, Trans Union investigator Jennifer Terrell began investigating Plaintiff's case

9 | after a co-worker discovered that Plaintiff had used two Social Security numbers.  Ms. Terrell

10 | indicated that she spoke to Plaintiff on March 10, 2004 and he asked her about a Washington state

11 | law that requires the deletion of accounts from a consumer's credit report when the consumer files a

12 | police report alleging that fraud has occurred.  Ms. Terrell stated that on March 12, 2004, Plaintiff

13 | sent her the state law he was referring to and she deleted numerous accounts from Plaintiff's credit

14 | file that he had listed as fraudulent on a police report sent to Trans Union.

15 |       On May 17, 2004, Ms. Terrell spoke with Detective Scott Slagle of the Snohomish County

16 | Sheriff's Office.  She sent Detective Slagle a copy of a witness statement from a police report that

17 | Plaintiff had sent to Trans Union.  Detective Slagle confirmed that Plaintiff had altered the witness

18 | statement and that it did not match police records.  On May 24, 2004, Ms. Terrell spoke to Plaintiff

19 | concerning Detective Slagle's statements, and he admitted that he had altered the witness statements

20 | sent to Trans Union in order to have accounts removed from his file.  It appears that Plaintiff later

21 | sent unaltered police records to Trans Union in October 2004.

22 |       Aside from Plaintiff's admitted alteration of police reports, Trans Union fraud investigators

23 | found aspects of Plaintiff's case inconsistent or  incredible.  Plaintiff had received a second Social

24 | Security number in 1998.  His explanations for the second number varied.  According to discovery

25 | responses produced by Plaintiff, he informed the Washington Attorney General's office in 2001 that

26 | he had gotten the second Social Security number because of identity theft and because he wanted to

"start over."  In May 2004 he told Ms. Terrell of Trans Union that he had gotten the second number because he had moved from Canada.[1]  In October and November 2005, after he had filed his complaint against Trans Union, Plaintiff told Trans Union attorney Jeremy Rhyne two different stories regarding the second Social Security number: first, that he had gotten the number because his original was too similar to his brother's and later, because he believed he was being stalked and that his life was threatened.

Due to Plaintiff's alteration of police records, Trans Union refused to remove several accounts from Plaintiff's credit record that Plaintiff claimed were the result of fraud.  Trans Union also reinserted accounts that it had previously removed from his credit file.  Ms. Terrell of Trans Union sent a letter to AllianceOne Receivables Management stating that she believed Plaintiff was using multiple Social Security numbers concurrently and that she believed he was trying to clear up bad credit using any means possible.  Trans Union also apparently deleted records of accounts establishing Plaintiff's good credit.

Plaintiff filed a complaint against Trans Union in King County District Court in December 2004, claiming (among other things) that the company had violated the Fair Credit Reporting Act (FCRA) by inaccurately reporting fraudulent accounts and failing to investigate information thoroughly.  Plaintiff also brought claims for libel and defamation of character, based on Ms. Terrell's letter to AllianceOne Receivables Management regarding her belief that Plaintiff was using multiple Social Security number concurrently.  Trans Union removed the case to this Court later that month. On November 17, 2005, Plaintiff filed a motion to voluntarily dismiss this matter with prejudice.  The Court granted the motion.  Trans Union then filed this motion for attorneys' fees on the ground that Plaintiff had filed the action in bad faith or for purposes of harassment.

---

[1]  In his interrogatory responses, Plaintiff did not indicate that he had lived in Canada at any time during the past ten years.  (Dkt. No. 19, Ex. A at 5).

**Analysis**

Because Plaintiff voluntarily dismissed his action with prejudice, Trans Union is the prevailing party in this litigation.  Section 1681n(c) of the FCRA provides as follows:

> Upon a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, the court shall award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion, or other paper.

15 U.S.C. § 1681n(c).  The term "bad faith" is not defined in the statute.  In general, bad faith "is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; . . . it contemplates a state of mind affirmatively operating with furtive design or ill will."  Black's Law Dictionary 139 (6th ed. 1990); accord United States v. Manchester Farming P'ship, 315 F.3d 1176, 1183 (9th Cir. 2003) (applying Black's definition of bad faith).

There is little case law applying Section 1681n(c).  However, the Court finds that Plaintiff's conduct supports a finding that he filed his complaint and pursued this action in bad faith and for the purpose of harassment.  It is undisputed that Plaintiff sent altered police records to Trans Union in an attempt to get Trans Union to remove accounts from his credit file.  Plaintiff's complaint is based on alleged errors in his credit report between March and December of 2004.  In May 2004, Trans Union uncovered the fact that Plaintiff had submitted altered police records during this period.  Plaintiff threatened to sue the company during this time and then filed his complaint in December 2004, despite the justifiable suspicion and obvious confusion that fraud investigators at Trans Union would have had about his credit record given his admitted alteration of police records.[2]  For Plaintiff to bring suit against Trans Union after committing such a blatant act of dishonesty strikes the Court as a plain example of filing a lawsuit in bad faith and for purposes of harassment.

---

[2]      Plaintiff alleged in his complaint that he had provided Defendant with "a copy of documentation to support his claim to be the victim of Identity Theft" in March 2004 and that "defendant stated that the police report provided to them was insufficient to meet the requirements to suppress fraudulent credit information" in May 2004  (Complaint ¶¶ 8-9).  These allegations are misleading at best.  The documentation that Plaintiff provided Trans Union in March 2004 were altered police records, and Plaintiff admitted to Trans Union in May 2004 that he had altered these police records.

Plaintiff has also given conflicting stories regarding his second Social Security number to Trans Union employees and attorneys, as well as to the Washington Attorney General's office.  The record includes at least four different explanations that Plaintiff has given for having a second Social Security number.

In addition, Plaintiff's conduct during discovery in this case was extremely uncooperative.  He repeatedly failed to respond to discovery requests in a timely manner.  During the period of July 8 through October 10, 2005, his excuses given to Trans Union attorney Jeremy Rhyne for his inability to respond to discovery requests included that he had never received the requests, that he had recently been married, that he was out of the country, and that his son had been diagnosed with a terminal disease.  After Trans Union indicated that it intended to file a motion to compel discovery and for sanctions, Plaintiff filed a motion to dismiss his case voluntarily.

Trans Union requests $17,975.14 in attorneys' fees and costs for defending this action.  Trans Union's attorneys and support staff billed 67.6 hours to this case, with attorney time billed at a blended rate of $265 per hour for all attorneys who worked on the case and a limited amount of support staff time billed at $70-$75 per hour.  Trans Union also requests $274.14 in costs.  The Court finds that the fees and costs requested are reasonable under the circumstances, particularly in light of the added time that was required due to the difficulties in obtaining discovery from Plaintiff.

### Conclusion

The Court finds that Plaintiff filed his complaint and pursued this action in bad faith and for purposes of harassment.  Plaintiff altered police records in an attempt to have accounts deleted from his credit record with Trans Union, gave conflicting explanations for his use of multiple Social Security numbers, and engaged in obstructionist behavior during discovery.  The Court GRANTS Trans Union's request for attorneys' fees and costs in the amount of $17,975.14.

//

//

//

ORDER - 5

1

The Clerk shall send a copy of this order to Plaintiff and to all counsel of record.

2

Dated: May 25, 2006.

3

s/Marsha J. Pechman
Marsha J. Pechman
United States District Judge

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER - 6